[Cite as *E.F. v. Seymour*, 2018-Ohio-3946.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [E.F.], | : | |
| Plaintiff-Appellant, | : | |
| | | No. 18AP-17 |
| v. | : | (C.P.C. No. 16CV-6101) |
| Angie Seymour et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 27, 2018

**On brief:** *O'Connor, Acciani & Levy, LPA,* and *Anna C. Hines,* for appellant. **Argued:** *Anna C. Hines.*

**On brief:** *Curry, Roby & Mulvey Co., LLC, Robert S. Roby,* and *Trent M. Thacker,* for appellee Susan Griffith. **Argued:** *Trent M. Thacker.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, E.F., by and through his parents, appeals a decision of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Susan Griffith, on appellant's claims of common-law negligence and statutory strict liability. We affirm the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   On February 22, 2017, appellant filed an amended[1] complaint against appellee and her daughter, Angie Seymour ("Seymour"), alleging common-law negligence and negligence per se.   According to the complaint, on or about July 19, 2015, a dog owned, kept, or harbored by the defendants on a residential premises located in Franklin County, Ohio attacked and bit appellant.   The amended complaint alleged that appellant suffered injuries to his left eye, nose, and cheek as a direct and proximate result of the defendants' failure to confine and/or restrain the dog and/or failure to control the dog and that the injuries resulted in damages.   Furthermore, the amended complaint alleged that the defendants knew or reasonably should have known the dog was vicious, and keeping a vicious dog would cause an unsafe environment creating a potential risk to area residents.   As a result, the amended complaint alleged that the defendants were negligent and/or violated R.C. 955.22 and 955.28.

{¶ 3}   Appellee filed a motion for summary judgment on May 9, 2017 supported by the affidavit and deposition of appellee and the depositions of appellant's mother, S.F., and Seymour.   According to S.F.'s deposition, appellant was playing cops and robbers in the grassy area beside the fence separating appellant's yard from Seymour's yard, where the dog was located.   Appellant stopped to look at the dog and put his hand on the fence. At that point, the dog "ran, climbed up and over [the fence] and got him."   (S.F. Dep. at 40.)   In her motion, appellee argued that appellant's claims must be dismissed because appellee is not the owner, keeper, or harborer of the dog that bit appellant.   Appellee provided that all the evidence in the case showed Seymour was the owner and keeper of the dog.   Moreover, appellee argued that she was not the "harborer" of the dog because the evidence demonstrated that appellee had neither possession nor control of the premises where the dog lived.   (Mot. For Summ. Jgmt. at 7.)

{¶ 4}   Specifically, appellee contended that undisputed evidence shows that appellee rents the property to Seymour and acts as landlord.   It is undisputed that appellee purchased the property without contribution from Seymour, that both appellee and

---

[1] Appellant's original complaint named appellee's husband, John Griffith, as a defendant along with Seymour. Following John Griffith's deposition, appellant filed the amended complaint to substitute appellee in place of John Griffith.

Seymour are on the deed to the property, and Seymour pays appellee $675 per month to live on the property. Appellee testified that the money is rent and is "kind of going toward the purchase of the property" and averred that Seymour leased the premises from a company run by appellee and her husband "for the purpose of renting out rental properties." (Appellee Dep. at 22; Appellee Aff. at 2.) Seymour testified that her plan to get a loan and pay off her mother fell through, and she continued to pay a monthly amount of $675 to her mother to live at the property. Furthermore, appellee averred that she did not maintain control over the premises and that the property was a single-family residence with no common areas. Appellee testified that she normally calls to see if somebody is home before she goes to the property and will knock on the door and wait for an answer prior to entering the home.

{¶ 5} Regarding the common-law negligence claims, in her motion appellee further argued that the evidence showed appellee had no reason to know of any alleged vicious propensity of the dog prior to the incident. Appellee testified in her deposition that she was unaware if the dog ever attacked or bit another animal or person and averred that she was not aware of any incidents involving the dog causing injury to any person.

{¶ 6} Appellant filed a memorandum in opposition to appellee's motion for summary judgment on May 30, 2017. Within it, appellant first argued that the evidence showed appellee was the sole owner, rather than the co-owner of the home. Appellant maintained that appellee retained possession and control of the property as sole-owner because she never transferred any of her interest to her daughter through a written contract, in violation of the statute of frauds. To appellant, appellee's statement that the property was Seymour's "is belied by the fact that * * * Seymour pays [appellee] $675 a month to live there." (Appellant's Resp. at 13.) Appellant then argued that appellee exercised control over the property. As evidence of control, appellant cited the mother-daughter relationship between appellee and Seymour, appellee essentially purchasing the house for Seymour and allowing Seymour to live there indefinitely, appellee working on house projects (such as painting, putting carpet down, installing a toilet, and fixing up the kitchen), appellee living one-half mile from the property, and appellee having an open invitation to visit and unrestricted access to the unlocked home. Furthermore, according

to appellant, appellee testified that she would have told Seymour to get rid of her dogs if she thought they were biting or attacking people.

{¶ 7}   Appellant also argued that a question of fact remains as to whether appellee knew the dog was vicious so as to impose liability.  Appellant contended that it "defies credulity" appellee would not know about prior incidents involving the dog, including Seymour receiving a citation for the dog not being registered because the dog was running loose, the dog killing kittens that Seymour's daughter had put in a bag on a table in the home, and the dog attacking another dog and appellee allegedly taking the dog away in her car before animal control arrived.  (Appellant's Resp. at 13.)

{¶ 8}   Appellee filed a reply on June 2, 2017, whereby she argued that appellant misstated the law on statute of frauds, as landlord-tenant law supersedes the statute of frauds in regard to whether a lease may be written.  As such, appellee argued that Seymour's oral lease with appellee is valid under Ohio law, and, therefore, it is presumed by law that Seymour had possession and control over the premises.  According to appellee, appellant has done nothing to rebut this presumption.  Appellee has never resided in the property and would not enter the property without calling and knocking on the door first.  Regardless of any alleged awareness of the vicious nature of the dog, which appellee did not concede, no genuine issues of material fact remain, and appellee is entitled to judgment as a matter of law as to whether appellee was a "harborer," which is the threshold issue for both statutory and common-law negligence liability.  (Appellee's Reply at 3.)

{¶ 9}   On June 29, 2017, the trial court filed a decision and entry granting appellee's motion for summary judgment.  The trial court discussed that under both common law and strict liability for dog bites, it must first be shown that the defendant is the owner, keeper, or harborer of the dog before liability can be imposed.  The trial court concluded that based on the undisputed evidence, appellee did not have the requisite possession and control of the property and therefore was not a harborer of the dog—the only issue in dispute.  The trial court found the lack of a written lease and the personal relationship as mother and daughter did not defeat summary judgment in this case.

{¶ 10} On August 17, 2017, the trial court granted summary judgment in favor of appellant against Seymour based on both strict statutory liability and common-law

negligence. A magistrate awarded appellant damages against Seymour in the amount of $130,199.20. After overruling Seymour's objections, the trial court adopted the magistrate's decision indicating that the decision was a final and appealable order, and there is no just cause for delay.

{¶ 11} Appellant filed a timely appeal.

## II. ASSIGNMENT OF ERROR

{¶ 12} Appellant presents one assignment of error for our review:

> The trial court erred in granting the motion for summary judgment filed by Defendant-Appellee Griffith.

## III. STANDARD OF REVIEW

{¶ 13} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293.

{¶ 14} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992).

## IV.  DISCUSSION

{¶ 15}  Under the sole assignment of error, appellant contends the trial court erred in granting appellee's motion for summary judgment.  For the following reasons, we disagree with appellant.

{¶ 16}  "A plaintiff who suffers injury as a result of a dog bite may, in the same case, pursue both a strict liability claim under R.C. 955.28, and a common law negligence claim."  *Coontz v. Hoffman*, 10th Dist. No. 13AP-367, 2014-Ohio-274, ¶ 10.  Pursuant to R.C. 955.28(B), in pertinent part:

> The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit criminal trespass or another criminal offense other than a minor misdemeanor on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense other than a minor misdemeanor against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.

{¶ 17}  Thus, "[t]o prevail in a dog bite case [under R.C. 955.28] the plaintiff must prove (1) ownership, keepership, or harborship of the dog, (2) the actions of the dog were the proximate cause of damage, and (3) the monetary amount of damages."  (Internal citations omitted.)  *Brown v. FMW RRI NC LLC*, 10th Dist. No. 14AP-953, 2015-Ohio-4192, ¶ 11.  In a common-law negligence claim, the plaintiff must prove (1) the defendant owned or harbored the dog, (2) the dog was vicious, (3) the defendant knew of the dog's viciousness, and (4) the dog was kept in a negligent manner after the defendant knew of its viciousness.  *Coontz* at ¶ 10-12.

{¶ 18}  Both parties agree that appellee's status of "harborer" is a threshold issue for both strict statutory liability and common-law negligence in this case.  (Appellant's Brief at 5; Appellee's Brief at 7.)  There is no dispute that appellee was not an owner or keeper of the dog.

{¶ 19}  A harborer " 'is one who has *possession and control* of the premises where the dog lives, and silently acquiesces to the dog's presence.' "  (Emphasis sic.)  *Coontz* at ¶ 12, quoting *Samas v. Holliman*, 10th Dist. No. 02AP-947, 2003-Ohio-1647, ¶ 14.

Generally, " '[t]o possess a property means to use or occupy it.' " *Engwert-Loyd v. Ramirez*, 6th Dist. No. L-06-1084, 2006-Ohio-5468, ¶ 11, quoting *Parker v. Sutton*, 72 Ohio App.3d 296, 298 (6th Dist.1991). "Furthermore, the hallmark of control is the ability to admit or exclude others from the property." *Engwert-Loyd* at ¶ 11.

{¶ 20} " '[H]arboring' is ordinarily a question of fact to be determined by a jury." *Brown* at ¶ 21. However, summary judgment in favor of the defendant is appropriate where undisputed facts show the defendant did not possess or control the property where the dog lives. For example, where the case involves a defendant who is a landlord out-of-possession and control of the premises where the dog lives, this court has granted summary judgment in favor of the landlord. *Compare Coontz* at ¶ 26 (finding summary judgment appropriate on issue of "harboring" where the undisputed evidence showed the defendant-landlord had no possession or control over the leased premise where the dog lived) with *Brown* at ¶ 1-6, 14, 20-21 (finding summary judgment inappropriate on the issue of "harboring" where the dog-bite victim presented evidence showing a hotel allowed dogs in a common area outside of the hotel and retained "exclusive possession and control" over the common area where the dog bite occurred). This is because, absent a contrary agreement, a lease agreement transfers both occupation and control of the subject premises to the tenant. *Coontz* at ¶ 14; *Kovacks v. Lewis*, 5th Dist. No. 2010 AP 01 0001, 2010-Ohio-3230, ¶ 28. "For a landlord to be liable as a harborer for injuries inflicted by a tenant's dog, 'the plaintiff must prove that the landlord permitted or acquiesced in the tenant's dog being kept in the common areas or areas shared by the landlord and tenant.' " *Id.* at ¶ 29, quoting *Stuper v. Young*, 9th Dist. No. 20900, 2002-Ohio-2327, ¶ 13. Where the property consists of a single-family home set on a normal-sized city lot, there is a presumption that the tenants possessed and controlled the entire property. *Engwert-Loyd* at ¶ 11.

{¶ 21} Appellant first contends while it is Seymour that lives on the property, appellee, as "co-owner" of the property, has the right to possession and control of the premises and therefore is a "harborer" for purposes of dog-bite liability under both strict liability and common-law negligence. (Appellant's Brief at 8.) Furthermore, appellant argues that genuine issues of material fact exist whether appellee is immune from liability by claiming she is a landlord due to the mother-daughter relationship, her status as a "co-

owner" of the residence, and the lack of a written lease agreement. Alternatively, appellant argues even if appellee is a landlord to Seymour, there nonetheless exists a genuine issue of fact in this case due to: the mother-daughter relationship; lack of a written lease agreement; appellee maintaining home insurance on the property; working on projects and helping to maintain the property; not needing key access to the property and visiting weekly; never renting to any other person as with other rental properties; and appellee's testimony that she would tell Seymour she needed to find another home for the dog if the dog was vicious.

{¶ 22} In support of his argument, appellant cites to *Hill v. Hughes*, 4th Dist. No. 06CA2917, 2007-Ohio-3885. In *Hill*, a father leased to his son, by oral agreement, a single-family residence located contiguous to the father's own home. The son worked for the father's business at the leased premises, and the father acknowledged that he had the authority to make his son remove the dog from the property. The plaintiff was bitten by the son's dog on the leased property and brought suit against both the father and son. The Fourth District Court of Appeals found that although a landlord will generally not be held responsible for injury caused by a tenant's dog, an issue of material fact remained as to whether the father was a "harborer" on these facts. The dissent in *Hill* noted the attack did not occur in a common area under the control of the landlord-father, Ohio law does not support the notion that a landlord retains control of property by reserving the right to force a tenant to get rid of a dog, and, regardless, that a genuine issue of fact on the issue of "control" alone is insufficient to meet the test, which also requires "possession" of the premises. *Id.* at ¶ 32.

{¶ 23} Appellant additionally cites to a common pleas court decision, *Peterson v. McCarthy*, Franklin C.P. No. 11CVC-12-15056 (Apr. 25, 2013), as a case that noted *Hill* in finding a question of material fact remained on the issue of "harboring" where a family relationship was at issue. Appellant recognizes, after *Peterson*, this court, in *Coontz* at ¶ 18, identified *Hill* as an outlier to established law in Ohio and the precedent of this court but contends the point we made in *Coontz* is irrelevant to the present case as Seymour did not have exclusive possession of the property here. *Id.* at ¶ 18.

{¶ 24} Appellee counters that appellant never raised the "co-owner" issue to the trial court and thus waived it for appellate review. Regardless, appellee contends that co-

ownership in and of itself does not impose liability where the co-owner is out of possession and control of the premises where the dog bite occurs. Appellee maintains that she was not in possession of the property, leased the property to Seymour, and did not have control over the property. Appellee cites to *Kovacks* and *Brown v. Terrell*, 9th Dist. No. 28845, 2018-Ohio-2503, in support of affirming the trial court decision.

{¶ 25} In *Kovacks*, the landlord-parents purchased a property with the intent that their tenant-daughter would purchase the residence. There was no written lease, and the daughter paid them monthly rent equal to the mortgage in addition to paying property taxes, insurance, and utilities. The daughter was responsible for yard work and maintaining the property. The parents never resided in the residence but did have keys to it. However, the parents would never let themselves into the home without letting the daughter know in advance. The *Kovacks* court found "no authority for the proposition that such act by a landlord as using a key to let themselves into a property with the knowledge of the tenant constitutes 'control' for purposes of liability in tort." *Id.* at ¶ 34. Rather, by leasing the residence to the daughter, they had relinquished the right to admit people and exclude them from the property.

{¶ 26} In *Brown*, 2018-Ohio-2503, a recently decided decision involving statutory and common-law dog-bite claims against a dog owner and her grandmother, the Ninth District Court of Appeals affirmed the trial court's granting of summary judgment in favor of the grandmother. In that case, a dog owned by "Territa" broke free of its chain and attacked a child playing next door. The home where the dog lived was owned by Terrell's grandmother "Yvonne" who had not lived there recently. Yvonne did not have a written lease with Territa but permitted her to live in the house. Territa rarely paid rent and did pay for utilities, while Yvonne paid for homeowners insurance. Yvonne initially paid someone to perform maintenance on the property but, at some point, Territa took over those responsibilities. The Ninth District noted undisputed evidence that Yvonne did not live at the house herself but permitted Territa to live there based on "[s]ome type of oral agreement or arrangement." *Id.* at ¶ 14. The court distinguished *Hill* and found that the plaintiff presented no evidence to overcome the presumption that Territa possessed and controlled the entire property and presented no evidence to show that Yvonne possessed

or controlled any common areas where the dog was chained and where the attack occurred.

{¶ 27} In this case, we will initially address whether appellant waived certain arguments by failing to present them to the trial court in the first instance. Under Ohio law, " 'arguments raised for the first time on appeal are improper.' " *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20, quoting *Marysville Newspapers, Inc. v. Delaware Gazette Co., Inc.*, 3d Dist. No. 14-06-34, 2007-Ohio-4365, ¶ 23. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034 (internal quotations omitted) ("It is a well-established rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."). "Further, while this court's standard of review on a motion for summary judgment is de novo, that standard 'does not supersede [an appellate court's] settled practice of not addressing issues raised for the first time on appeal.' " *Tucker* at ¶ 20, quoting *Henson v. Cleveland Steel Container Corp.*, 11th Dist. No. 2008-P-0053, 2009-Ohio-180, ¶ 77.

{¶ 28} In his motion for summary judgment to the trial court, appellant argued that appellee was the sole owner of the premises and that an oral lease was insufficient under Ohio law to convey her interest in the property to Seymour. As a result, appellant argued that Seymour's payments to appellee conferred no control of the property to Seymour absent a written agreement. On appeal to this court, appellant has apparently abandoned his argument regarding the statute of frauds and instead attempts to raise, for the first time, issues surrounding co-owners related to co-tenancy and possession. Because appellant failed to raise this argument before the trial court, we decline to consider it for the first time on appeal. *Tucker.*

{¶ 29} Moreover, after independent review, we find summary judgment appropriate in favor of appellee. This case is more like *Kovacks* and *Brown*, 2018-Ohio-2503, than *Hill*. Appellee pointed to Civ.R. 56 evidence that appellee did not live in the property and that appellee and Seymour were essentially in a landlord-tenant type relationship. Like in *Kovacks*, Seymour paid an amount each month to appellee to reside in the single-family residence at issue with the goal of buying it outright at some point in

the future.   Similar to *Brown*, 2018-Ohio-2503, some type of oral agreement or arrangement existed in which Seymour would live on the property and pay appellee $675 per month.   Appellee also pointed to evidence that the property at issue had no common area and that appellee did not enter the property without calling or knocking first.

{¶ 30} Nothing offered in appellant's memorandum in opposition to summary judgment rebuts the contention that appellee was not in possession of the property or, even absent a landlord-tenant relationship, that appellant otherwise controlled the property for purposes of tort liability.   Although appellant contends appellee testified that she would tell Seymour she needed to find another home for the dog if the dog was vicious, our review of the deposition testimony shows that appellee referred to not tolerating a dangerous dog on another specific property.   In reference to the property where Seymour lived and the dog bite occurred, appellee testified "[a]s far as I'm concerned, it's her property.  I don't control what animals she has.  That's her choice because that's her house, even though she's making payments to me."  (Appellee Dep. at 21.)  Furthermore, we do not find appellee's one-half mile proximity to the property, the ability to visit the home, or assisting with house projects and maintenance evidences possession or control of the property to avoid summary judgment in this case.

{¶ 31} Furthermore, this court previously identified *Hill*, which found an issue of material fact remained as to whether a father/landlord harbored his son's/tenant's dog, as an outlier to established precedent in Ohio.  *Coontz* at ¶ 18.  Regardless, *Hill* concerned a situation where the father's/landlord's property sat continuous to the property leased by the son/tenant, and the son worked on the father's business on the leased premises. The father in *Hill* acknowledged that he had the authority to make his son remove the dog from the property.  We find no reason to follow *Hill* considering the factual distinctions between it and the instant case.

{¶ 32} On independent review, no genuine issue of material facts exists. Construing the evidence most strongly in favor of appellant, we find reasonable minds could not conclude that appellee was in possession or control of the premises where the dog lived and, therefore, could not conclude that appellee was a "harborer" of the dog that bit appellant.  *Coontz* at ¶ 12.  As a result of this finding, appellant's issue regarding

appellee's alleged awareness of the dog's viciousness is moot. *Id.* at ¶ 11-12, 25. Therefore, considering all the above, summary judgment in favor of appellee is appropriate.

{¶ 33} Accordingly, we overrule appellant's first assignment of error.

## V. CONCLUSION

{¶ 34} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, J., concurs.
HORTON, J., dissents.

HORTON, J., dissenting.

{¶ 35} I respectfully dissent with the majority on the myriad issues of fact surrounding the question of whether defendant-appellee, Susan Griffith, is a "harborer" of the dog who possessed both possession and control of the property. The mother-daughter relationship, the lack of a written lease agreement, the question as to whether the $675 quasi-monthly payments daughter made to mother constitute evidence of co-ownership versus "rent" payments, the mother's knowledge of the viciousness of the dogs, the unfettered access mother had to the property and her improvements made, and the actual level of control and possession mother had over the property, among other things, present genuine issue of fact for a jury to decide. For these reasons, I respectfully dissent.

_____