[Cite as *Beswick Group N. Am., L.L.C. v. W. Res. Realty, L.L.C.*, 2017-Ohio-2853.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104330**

---

## BESWICK GROUP NORTH AMERICA, L.L.C., ET AL.

PLAINTIFFS-APPELLANTS

vs.

## WESTERN RESERVE REALTY, L.L.C., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-844723

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 18, 2017

**ATTORNEY FOR APPELLANT**

Joseph A. Pfundstein
P.O. Box 46449
Cleveland, Ohio 44146


**ATTORNEYS FOR APPELLEES**

David M. Dvorin
Lieberman, Dvorin & Dowd, L.L.C.
30195 Chagrin Boulevard, Suite 300
Pepper Pike, Ohio 44124

Cynthia A. Lammert
Coakley & Lammert Co., L.P.A.
1100 Superior Avenue, East, Suite 1314
Cleveland, Ohio 44114

**Also Listed**

**For Prominent Title Agency, L.L.C.**

Christopher P. Finney
Finney Law Firm, L.L.C.
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio 45245

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Appellant, the Beswick Group North America, L.L.C. ("BGNA"), appeals the grant of summary judgment in favor of appellees, Western Reserve Realty, L.L.C., d.b.a. Re/Max Traditions ("Re/Max"), David Reimer, and Diane Armington, where the court determined that appellees were entitled to commissions for the sale of commercial property. BGNA argues there are unresolved material issues of fact that preclude summary judgment. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

**{¶2}** BGNA entered into two exclusive rights contracts with Re/Max to market two adjoining commercial properties owned by BGNA for sale or lease. The contracts were signed October 30, 2013. The contract terms were for six months, with provisions that extended Re/Max's right to a six percent sales commission for six months for any contract for sale that was formed where the buyer was shown the property by Re/Max or another agent during the initial contract term. Re/Max, through its agents showed the properties and an offer was made, and according to Re/Max, accepted by BGNA. However, the closing date did not occur until November 12, 2014. BGNA disputed that it owed Re/Max any commission on the sale. Re/Max filed notice with the escrow company employed for the sale and approximately $42,000 was held by the company and

later deposited with the court. Re/Max also filed broker's liens on the properties. The closing for the property went forward and the property was transferred to a new owner.

{¶3} BGNA filed suit against Re/Max, and two of its employees, Reimer and Armington, on April 24, 2015. BGNA claimed that appellees violated the exclusive rights contracts for the sale or lease of the two commercial properties. BGNA also asserted that appellees failed to properly furnish information and market the properties such that at least one missed closing occurred, and that appellees fraudulently filed liens against the properties when they were sold by another real estate broker after the exclusive rights contracts ended.

{¶4} Appellees filed an answer and counterclaim as well as a third-party complaint against Thomas Beswick, managing member of BGNA, individually. The escrow company was also named as a defendant, but it deposited the funds held by it with the court and was dismissed. Discovery proceeded, but BGNA and Beswick failed to respond to requests for admissions and other discovery requests.

{¶5} After this failure to respond, appellees filed a motion for summary judgment on January 28, 2015. After no response was filed by BGNA or Beswick, the court granted the motion in March 2016. Appellant then filed a motion for relief from judgment. Appellees filed motions for prejudgment interest, release of deposited funds, punitive damages, and attorney fees. However, BGNA filed a notice of appeal before these motions were addressed. After the notice was filed, the trial court ruled on the various motions, but later vacated the rulings based on a lack of jurisdiction.

**{¶6}** This court remanded the case for the limited purposes of ruling on the pending motions and determining the validity of the liens. The trial court granted appellees' motion for prejudgment interest and for the release of funds, but otherwise denied the motions. The trial court's entry can be read to find in favor of Re/Max in the amount of $28,500. After allowing additional briefing, BGNA now assigns the following error for review:

> I. The trial court abused its discretion in denying [BGNA's] motion to vacate judgment as there clearly was a showing of excusable neglect in the motion.

> II. The trial court erred in granting [appellees'] motion for summary judgment as even with the evidence construed as it was by the trial court, [appellees'] claim for a commission failed as a matter of law.

> III. The trial court erred in dismissing count two of [appellant's] complaint as the trial court never addressed the validity of the brokers [sic] lien filed by [appellees] which to date has not been released by [appellees] despite required to under Ohio Revised Code Section 1311.92.

## II. Law and Analysis

### A. Relief From Judgment

**{¶7}** BGNA first argues that the trial court should have granted its motion for relief from judgment. Civ.R. 60(B) provides an avenue for relief from a final judgment when the moving party shows that it has satisfied the requirement of the rule. To prevail, the movant must demonstrate that: "(1) the party has a meritorious defense or claim to present if the relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)-(5); and (3) the motion is made within a reasonable time * * *."

*GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150, 351 N.E.2d

113 (1976). If the movant fails to satisfy any of these requirements, it is not an abuse of the court's discretion to overrule the motion. *Id.* An abuse of discretion is connoted by a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶8} Here, BGNA made the motion soon after the court entered judgment so timing is not at issue. Therefore, BGNA had to show that it had a meritorious claim or defense and that it satisfied at least one of the prerequisites under Civ.R. 60(B)(1)-(5). BGNA argues that the judgment was entered against it as a result of excuseable neglect under Civ.R. 60(B)(2). Its attorney asserted that he did see the electronic notification that was sent when appellees filed their motion for summary judgment, and was unaware it had been filed. However, this does not constitute excusable neglect. *Garrett v. Gortz*, 8th Dist. Cuyahoga No. 90625, 2008-Ohio-4369, ¶ 16 ("it was incumbent on him to check the docket to keep informed of the progress of the case. The failure to * * * keep informed of the progress of an ongoing case does not qualify as excusable neglect."); *Roberts v. Roberson*, 8th Dist. Cuyahoga No. 92141, 2009-Ohio-481, ¶ 19.

{¶9} The affidavit filed with BGNA's motion does not raise a procedural irregularity that would demonstrate excusable neglect as occurred in *Am. Express Travel Related Servs., Inc. v. Carleton*, 10th Dist. Franklin No. 02AP-1400, 2003-Ohio-5950, ¶ 15. There, the Tenth District found excusable neglect when a party failed to respond to a motion for summary judgment that the party never received. Here, the affidavit of BGNA's attorney attests that the electronic notification that was sent must have gone to

his spam folder rather than his regular email inbox, so he never saw it. He averred that the system was new, and that he would have responded had he seen the notification. This would indicate that it was in fact delivered to him, but he did not take the necessary steps to ensure prompt notification. That is more similar to this court's *Garrett* case, where a party was having ongoing mail service issues and did not take steps to keep informed on the status of the case. *Garrett* at ¶ 16.

{¶10} Even if this did constitute some type of excusable neglect, BGNA does not have a valid claim or defense. "A 'meritorious defense' means a defense 'going to the merits, substance, or essentials of the case.'" *Wayne Mut. Ins. Co. v. Marlow*, 2d Dist. Montgomery No. 16882, 1998 Ohio App. LEXIS 2378 (June 5, 1998), citing *Black's Law Dictionary*, abridged, 290 (6th Ed.1991). BGNA, failed to respond to discovery requests, and thus admitted all the essential elements of appellees' breach of contract claim. BGNA's arguments to excusable neglect only involve its failure to file an opposition to summary judgment. That is not the reason the trial court granted appellees' motion. Appellees were able to show through BGNA's admissions and their own affidavits that BGNA breached the exclusive rights contracts and were owed a six percent commission. BGNA's claim that the closing occurred outside the six-month extension period of the agreement is unavailing given its admissions as explained below. Therefore, BGNA's first assignment of error is overruled.

**B. Summary Judgment**

**{¶11}** In its second assignment of error, BGNA argues that even though they failed to respond to appellees' motion for summary judgment, there are still material issues of fact that prevent the court from determining that appellees are entitled to judgment.

**{¶12}** Summary judgment provides an abbreviated mechanism of resolving disputes where there is no material issue to decide and one party is entitled to judgment as a matter of law.

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*Camardo v. Reeder*, 8th Dist. Cuyahoga No. 80443, 2002-Ohio-3099, ¶ 11. When a motion for summary judgment is made and supported as provided in Civ.R. 56, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue." *Id*. at ¶ 13. This court reviews a trial court's decision de novo — without deference — and conducts an independent review of the matter.

**{¶13}** Here, the only evidence introduced to the trial court indicates that appellees are entitled to judgment as a matter of law on BGNA's claims against them and appellees' claims against BGNA and Beswick. BGNA failed to submit any evidence to the trial court supporting its position that there are material questions of fact. Therefore, we are

only guided by the affidavits submitted by Armington and Reimer, the admissions of BGNA, and the pleadings.

{¶14} The affidavits establish that BGNA and Re/Max entered into exclusive rights contracts to market two commercial properties. Re/Max employees marketed those properties and received at least one offer from "3MB Capital." In the request for admissions sent to BGNA, Re/Max sought to have BGNA admit, among other things, that it entered into the contracts, the properties were shown to the ultimate purchaser during the contract terms, and BGNA accepted an offer from the purchaser during the pendency of the exclusive rights contracts:

> 3. Admit that Defendants procured a buyer for your property located at 14814 Clifton Boulevard, Lakewood, Ohio who paid an amount over the list price.
> 4. Admit that 3MB Capital made an offer to purchase the Archwood Properties on or about November 3, 2013.
>
> 5. Admit that Thomas Beswick, on behalf of Plaintiff, accepted the offer referenced in Request for Admission No. 4 on or about November 4, 2013.
>
> 6. Admit that Defendant David Reimer notified Thomas Beswick, on behalf of Plaintiff, in early January 2014 that 3MB Capital wanted an extension of the purchase agreement to give it time to obtain cash for the purchase, or, alternatively, a release of the purchase agreement and return of the $2,000 earnest money.
>
> 7. Admit that Thomas Beswick, on behalf of Plaintiff, did not respond to Defendant David Reimer regarding 3MB Capital's request for an extension of the purchase agreement as referenced in Request for Admission No. 6.
>
> 8. Admit that Thomas Beswick, on behalf of Plaintiff, did not sign a release of the 3MB Capital purchase agreement.

9. Admit that Thomas Beswick, on behalf of Plaintiff, did not sign a release of the Exclusive Right to Sell or Lease (Commercial) Agreement with Defendant western Reserve Realty, LLC dba RE/MAX Traditions.

10. Admit that you sold the Archwood Properties to 3MB Capital on or about November 12, 2014.

{¶15} As a result of BGNA's failure to respond to these requests for admissions, they were deemed admitted and considered by the trial court as such. Therefore, BGNA admitted that it entered into an agreement with Re/Max, accepted an offer for purchase above the listing price prior to the expiration of the agreement, and that Re/Max was entitled to a six percent sales commission.

{¶16} These admissions are determinative on BGNA's claims against Re/Max in its first cause of action and Re/Max's claims against BGNA.[1]

{¶17} While the closing may have taken place on November 12, 2014, the admissions and affidavits of Reimer and Armington indicate that BGNA accepted the offer for sale during the pendency of the exclusive rights contracts. Paragraph three of the exclusive rights contracts in the record states,

> After the termination of this Agreement or any extension thereof the Broker's authority shall continue for a six (6) month period as to any prospective Purchaser or Tenant or any other person to whom this Property was submitted during the term of this Agreement. If the Owner enters into an Agreement of sale or lease for the Property with any person to whom said Property was shown, presented or submitted by the Broker, or the Owner or any other broker, during the term of this Agreement, the

---

[1] BGNA separately assigns error to the grant of summary judgment and dismissal of its second cause of action to determine the validity of the broker's liens and the failure of appellees to release those liens after the escrow company retained funds to cover any broker's fees. Therefore, the second cause of action will be addressed in that assignment of error.

transaction shall be conclusively presumed to have been made by the Broker, and the commission shall be paid by the Owner.

{¶18} The only evidence in the record is that BGNA entered into an agreement for the sale of the property during the pendency of the agreement, but that the closing did not take place until after the expiration of the agreement. The contract does not concern the date of transfer of title, but the date a contract for sale is entered. With no contrary evidence in the record, Re/Max showed that it was entitled to judgment as a matter of law on its claims against BGNA. The claims against Beswick individually are not addressed in BGNA's appellate brief. Therefore, they do not appear to appeal the judgment in favor of appellees on this claim. However, the claim involves the same harm and the same damages to be satisfied from the funds deposited with the court. Therefore, there is no reason to separately address them on appeal when BGNA did not.

{¶19} Therefore, BGNA's second assignment of error is overruled.

### C. Broker's Liens Claim

{¶20} Finally, BGNA claims the trial court erred in granting summary judgment and in not vacating its judgment on its second cause of action seeking the court to determine the validity of the broker's liens that appellees filed because the court never addressed the validity of the liens.

{¶21} The trial court determined, pursuant to R.C. 1311.92(C), that the liens were extinguished when the escrow company retained sufficient funds to cover any broker fees, which it later deposited with the court. This statutory provision provides, "[w]hen funds have been placed in escrow pursuant to division (A) of this section, the broker claiming a

broker's lien under this section has an equitable lien on the escrowed funds, and the lien recorded on the lien property shall be extinguished as a matter of law." In fact, BGNA readily admits that the closing went forward and ownership transferred to the new owner. However, BGNA argues that appellees failed to file a release of the liens as required by R.C. 1311.90(A)(1). That allegation was included in its complaint with references to that code section. The affidavits filed by appellees and the admissions do not address this cause of action. While portions of the cause of action are premised on BGNA's argument that any liens are invalid because appellees did not earn a commission, a portion of this cause of action states specifically that appellees failed to file a release after BGNA deposited sufficient funds. In its motion for summary judgment, appellees asserted that because the property transferred, BGNA did not have standing to assert a cause of action on behalf of the new owner concerning any existing encumbrances to title. Appellees asserted that the property transferred to a new owner, and if any lien still remains on the property, a cause of action enures to that new owner, not BGNA. There is no evidence in the record that a lien exists on the property. The affidavit attached to the motion for relief from judgment does not mention any liens. Records of two liens were attached to BGNA's complaint, but this does not speak to the continuing existence of the liens or provide standing if the liens still exist on property no longer owned by BGNA.

{¶22} R.C. 1311.93 authorizes a cause of action against a broker that fails to timely release a lien under R.C. 1311.90. However, the statute restricts a cause of action to any person who has a legal or equitable interest in the lien property.

> Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy," *Baker v. Carr*, 369 U.S. 186, 204, as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen*, 392 U.S. 83, 101.

*Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

{¶23} Here, BGNA has not identified any legal or equitable interest it has in the property. The property was purchased by another entity and title transferred prior to BGNA filing its complaint. BGNA alleges, without support, that it has impacted its credit. Even if this is true, the statute requires more than a showing of damages. It requires a showing of a legal or equitable interest in the property, which BGNA has failed to establish.

{¶24} Similarly, BGNA has not identified an interest in the property or stake in the continued existence of the liens. Where a seller may be held liable for a continuing lien that exists after transfer of real property to a buyer, the seller may have a stake in the outcome because a seller may be liable to a buyer for valid, continuing liens that were not released at closing. But here, the liens are no longer valid as a matter of law. By the terms of R.C. 1311.92, those liens are no longer existing liens, and the buyer has a cause of action against the broker if the broker fails to timely release any liens. R.C. 1311.93.

{¶25} BGNA failed to set forth the necessary elements for a valid cause of action against appellees for their failure to timely release the liens. Further, BGNA is incorrect when it states that the trial court did not address the validity of the liens. The court found

that the liens were no longer subsisting liens as a result of R.C. 1311.92. Appellees' failure to file a release does not result in a cause of action capable of being sustained by BGNA, but by the new owner where BGNA has not identified a legal or equitable interest in the property after transfer.

{¶26} Therefore, the trial court did not err in granting summary judgment on BGNA's second cause of action or in denying BGNA's motion for relief from judgment.

### III. Conclusion

{¶27} Appellees demonstrated they were entitled to judgment as a matter of law where they submitted affidavits and admissions determinative of the issues in the case. BGNA offered nothing to contradict the evidence submitted by appellees. Therefore, the trial court properly granted summary judgment to appellees. Further, BGNA failed to show that the trial court abused its discretion in denying their motion for relief from judgment.

{¶28} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR